UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DAVID QUINN,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIZAKAZI,[1]<br><br>    Defendant. | CIVIL ACTION NO. 3:20-CV-01698<br><br>(MEHALCHICK, M.J.) |

## **MEMORANDUM**

Plaintiff William David Quinn ("Quinn") brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1; Doc. 17, at 1; Doc. 16-2, at 9). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 8).

For the following reasons, the Commissioner's decision will be **VACATED**, and the case will be **REMANDED** for further consideration.

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

I. **BACKGROUND AND PROCEDURAL HISTORY**

Quinn is an adult individual born February 3, 1976, who was 40 years old at the time of his alleged onset date of disability – May 3, 2016. (Doc. 16-3, at 2). Quinn's age at the onset date makes him a "younger person" under the Social Security Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Quinn graduated from high school in 1995 and has no specialized vocational training. (Doc. 16-6, at 7). Prior to his alleged onset date, Quinn served as a dishwasher, prep cook, head cook and grill master. (Doc. 16-2, at 23).

On August 18, 2017, Quinn protectively filed applications under Title II and Title XVI of the Social Security Act, claiming disability beginning May 3, 2016. (Doc. 16-2, at 12). The Social Security Administration initially denied the applications on October 23, 2017, prompting Quinn's request for a hearing, which Administrative Law Judge (ALJ) Timothy Wing held on December 4, 2018. (Doc. 16-2, at 12). In a March 29, 2019, written decision, the ALJ determined that Quinn is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 16-2, at 25). The Appeals Council subsequently denied Quinn's request for review. (Doc. 16-2, at 2).

On September 18, 2020, Quinn commenced the instant action. (Doc. 1). The Commissioner responded on April 9, 2021, providing the requisite transcripts from Quinn's disability proceedings. (Doc. 15; Doc. 16). The parties then filed their respective briefs, with Quinn raising five principal bases for reversal or remand. (Doc. 17; Doc. 20; Doc. 23, Doc. 24; Doc. 26).

II. **STANDARDS OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920. Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920. The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(f), 416.912(a)(1).

### B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Quinn was disabled, but whether the Commissioner's determination that Quinn was not disabled is supported by

substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In a decision dated March 29, 2019, the ALJ determined that Quinn "has not been under a disability, as defined in the Social Security Act, from May 3, 2016, through the date of this decision." (Doc. 16-2, at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

Prior to proceeding through the five-step sequential evaluation, the ALJ found that Quinn met the insured status requirements of the Social Security Act through December 31, 2019. (Doc. 16-2, at 15).

#### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is

engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974. Here, the ALJ determined that "[Quinn] had not engaged in [SGA] since May 3, 2016, the alleged onset date." (Doc. 16-2, at 15). Thus, the ALJ proceeded to step two.

  B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1502(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Quinn had seven severe, medically determinable impairments: (1) Asthma/Chronic Obstructive Pulmonary Disease, (2) Cervical Spine Disorder including Herniation of the Nucleus Pulposus ("HNP"), Status Post Surgery, (3) Lumbar Spine Disorder, including Degenerative Disc Disease, Status Post Surgery, (4) Left Shoulder Disorder, including Impingement Syndrome, (5) Major Depressive Disorder, (6) Anxiety Disorder, and (7) Polysubstance Use Disorder, including Benzodiazepine Dependance and Cannabis Dependance. (Doc. 16-2, at 15).

C.  STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that none of Quinn's impairments, considered individually or in combination, meets or equals the severity of a listed impairment. (Doc. 16-2, at 15). The ALJ considered listings 1.02 – major dysfunction of a joint, 1.04 – disorders of the spine, 3.02 – asthma/chronic obstructive pulmonary disease, 12.04 – depressive, bipolar and related disorders, and 12.06 – somatic symptom and related disorders (Doc. 16-2, at 15-18).

D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

After weighing Quinn's written and oral statements against other evidence in the record, the ALJ found that Quinn's impairments could reasonably be expected to cause the alleged symptoms, but that his statements about the intensity, persistence, and the limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Doc. 16-2, at 19). The ALJ then went on to detail Quinn's medical records and treatment history. (Doc. 16-2, at 19-22). Considering all evidence in the record, the ALJ determined that Quinn has the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," with additional limitations to address his medical impairments:

> [Quinn] is limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, and scaffolds and crawling. [Quinn] is limited to occupations that require no more than occasional overhead reaching or pushing and pulling with the upper left extremity. [Quinn] must avoid concentrated prolonged exposure to fumes, odors, dust, gases, chemical irritants, environments with poor ventilation, temperature extremes, excessive vibration, and extreme dampness and humidity. [Quinn] is limited to occupations that do not require frequent exposure to dangerous machinery or unprotected heights. Finally, [Quinn] is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes.

(Doc. 16-2, at 18).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15

years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess v. Comm'r Soc. Sec.*, 931 F.3d, 198 202 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Quinn's RFC to the demands of Quinn's past relevant work as a dishwasher, prep cook, head cook, and grill master the ALJ found, based on testimony adduced from a vocational expert ("VE") at Quinn's administrative hearing, that Quinn was unable to perform any past relevant work. (Doc. 16-2, at 23).

    F. STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Quinn's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Quinn could have performed. (Doc. 16-2, at 23-24). In making this determination, the ALJ relied on the expertise of the VE, who testified that Quinn could have performed the requirements of representative occupations, such as a production helper, laminating machine operator, and weigher/shipping with open positions available

ranging from 980 to 1,200 in the local economy and 19,000 to 44,000 in the national economy. (Doc. 16-2, at 24).

Given the foregoing analysis, the ALJ determined that Quinn was not disabled and therefore denied his applications for benefits. (Doc. 16-2, at 24-25).

IV. **DISCUSSION**

Quinn advances four arguments on appeal, alleging that the ALJ erred by (1) failing to properly consider the third-party statement of Quinn's wife; (2) relying upon the opinions of non-examining physicians who issued reports in October of 2017 without the benefit of reports added after October of 2017; (3) failing to consider the impact of the VE's confirmation of no work at Step Five if the off-task limits are credited by the ALJ and failing to include the opinions of Ilan S. Levinson, M.D. in his assessment of Quinn's RFC; and (4) not properly determining Quinn's RFC by substantial evidence. (Doc. 17, at 3-12). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 20, at 3).

For the reasons set forth below, the Commissioner's decision will be **VACATED**, and the case will be **REMANDED** for further consideration.

    A. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S CONSIDERATION OF THE RECORD EVIDENCE.

Quinn's argues that the ALJ erred in finding that the third-party statement submitted by his wife, Audrey Quinn ("Mrs. Quinn") was not persuasive and that such an error cannot be ignored as "harmless error." (Doc. 17, at 3-9). Specifically, Quinn argues that "the ALJ erred in making an improper credibility finding with respect to his spouse solely upon the unsupported inference a relative who lacks medical training [and has an interest in the decision] is inherently less credible." (Doc. 17, at 3-4). The Commissioner avers that under

the new regulatory framework, the ALJ is not required to explain how evidence from a nonmedical source is considered and any explanation the ALJ gave as to his credibility determination of Mrs. Quinn's testimony was "above and beyond what [was] required." (Doc. 20, at 23-24, 26-27).

The Court of Appeals has consistently held that the ALJ's decision can be justified by substantial evidence only upon consideration of all the evidence of record. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ cannot "pick and choose" the evidence upon which to decide a case, but must weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir. 1994); *Fargnoli v. Massanari*, 247 F.3d 34, 41-43 (3d Cir. 2001). A selective approach to the evidence does not constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits. See *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011); see also *Smith v. Berryhill*, Civ. No. 17-2661, 2018 WL 7048069, at *9 (E.D. Pa. Nov. 27, 2018); *Colon v. Barnhart*, 424 F. Supp.2d 805, 813-14 (E.D. Pa. 2006). Where there is conflicting probative evidence in the record, the Third Circuit has consistently recognized a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided. See *Fargnoli*, 247 F.3d at 42; *Cotter*, 642 F.2d at 706.

Applying the above standard to the present record, the Court finds that the ALJ did fail to consider the record as it related to Quinn's impairments and the effect which they had in rendering him off task. In relevant part, Quinn has suffered from severe impairments in both his cervical and lumbar spine. (Doc. 16-7, at 2, 53-54) As noted in the ALJ's decision,

Quinn underwent an Anterior Cervical Discectomy and Fusion of the C5-6 and C6-7 due to herniated disc pulposus with cervical radiculopathy. (Doc. 16-2, at 19; Doc. 16-7, at 2, 53-54). Additionally, Quinn suffers from degenerative disc disease at the L4-L5 level with noted paracentral disc protrusion with some caudal extension displacing the right S1 nerve root and deforming the right ventral thecal sac. (Doc. 16-2, at 19; Doc. 16-7, at 53-54; 16-9, at 95). Quinn contends that due to his multiple operations of the back and neck, as well as related emotional issues, he would be required to take frequent breaks and absences and would be expected to be off task more than 15 to 20 percent of the workweek. (Doc. 17, at 10-12).

On September 23, 2017, Mrs. Quinn submitted a third-party witness statement. (Doc. 16-6, at 15-24). When asked whether Quinn's illnesses, injuries or conditions limit his ability to work, Mrs. Quinn stated that "[s]tanding to[o] long hurts him, sitting to[o] long hurts him. He can't lift his arms or twist or bend down. Can't move his head left or right so driving is difficult." (Doc. 16-6, at 16). Mrs. Quinn noted further that Quinn takes care of their daughters and pets but cannot mow the lawn, shovel snow, or take their daughters swimming; that he is tossing turning and uncomfortable when trying to sleep; that he socializes once a week; that he cannot lift anything; and that he has very limited mobility in his back. (Doc. 16-6, at 17-23). The ALJ found that Mrs. Quinn's statement was "at most partially persuasive", concluding:

> [T]he record does not indicate that Ms. Quinn is medically trained to make exacting observations as to the claimant's alleged impairments or limitations. Furthermore, Ms. Quinn cannot be considered a disinterested third party witness whose statements would not tend to be influenced by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.
>
> (Doc. 16-2, at 22).

The language which the ALJ uses in his decision is similar to that which the ALJ used in *Dougherty*. (Doc. 16-2, at 22); *see* No. 3:20-CV-00504, 2021 WL 3077504, at *6 (M.D. Pa. July 21, 2021). There, the Court held that the ALJ improperly discounted the opinion of the claimant's husband because he was an interested party and non-medical expert. *Dougherty*, 2021 WL 3077504, at *6. Specifically, the Court explained that the ALJ erred in

> "assign[ing] only moderate weight to Mr. Dougherty's third-party statements for the sole reason that he is not a trained medical expert. . . . Consistent with SSR 16-3p, Mr. Dougherty's opinion was not intended to serve as an opinion from, in the words of the ALJ, 'a trained medical expert who has been schooled in making appropriate observation[s] of signs and symptomatology.' *See* . . . SSR 16-3p, 2017 WL 5180304 at *7 . . . . Rather, Mr. Dougherty's opinion was intended to serve as a personal observation of his wife. The ALJ should have measured how consistent his observations were with his wife's statements about her symptoms and the medical record as a whole. *See* SSR 16-3p, 2017 WL 5180304 at *7 . . . . It was improper for the ALJ to discount Mr. Dougherty's non-medical opinion on grounds that he is not a medical expert. . . . [S]*ee Richards v. Colvin*, 223 F. Supp. 3d 296, 306 (M.D. Pa. 2016) (holding that an ALJ cannot discount a lay witness's report solely because he or she is not a disinterested witness). Remand is necessary for consideration of this evidence and in what respect it is or is not consistent with the medical record. *See Richards*, 223 F. Supp. 3d at 306.

*Dougherty*, 2021 WL 3077504, at *6.

The Commissioner's contention that the ALJ's consideration of Mrs. Quinn's statement was permissible pursuant to the new regulations and that the reasoning set forth should be overlooked because the ALJ was not obliged to provide his reasoning errs in two regards. First, although the manner in which medical opinions are considered has changed, the provisions of SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929 remain effective.[3] *See also* 20

---

[3] As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of opinions applies to the ALJ's evaluation of the opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar.

C.F.R. §§ 416.920c, 404.1520c. Those relevant regulations continue to require that the ALJ consider such testimony when assessing the overall credibility of Quinn's allegations. 20 C.F.R. §§ 416.920c, 404.1520c ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work."). Second, the ALJ has made a statement which is subject to review by this Court and even if the ALJ was not obliged to articulate his reasoning, his reasoning set forth in his opinion is subject to review. See 42 U.S.C. § 1383(c)(3); *Arnold*, 2014 WL 940205, at *1 ("[A]n ALJ[']s errors of law denote[] a lack of substantial evidence."). Thus, the Court is required to determine whether the ALJ's findings and reasoning comply with the law. It is well-settled in this Circuit that if a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Hence, once an ALJ sets forth his reasoning we are charged to determine whether that reasoning complied with the existing law.

Similar to the record in *Dougherty*, the record in the instant case indicates that SSA personnel made findings consistent with the statements of the claimant's spouse. (Doc. 16-3, at 6; Doc. 16-6, at 16); *see also* 2021 WL 3077504, at *5. At the time of his application, field office staff noted that "[Quinn] had to change positions multiple times during the interview

---

27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Per the new regulations an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources using the requirements [for medical opinions]." 20 C.F.R. §§ 416.920c, 404.1520c.

in order to try and get comfortable." (Doc. 16-3, at 6). Mrs. Quinn noted in her statement regarding Quinn that "[s]tanding to[o] long hurts him, sitting to[o] long hurts him[, h]e can't lift his arms or twist or bend down[, and he c]an't move his head left or right." (Doc. 16-6, at 16). The ALJ stated that Mrs. Quinn's statements were partially persuasive because Mrs. Quinn is not "medically trained" and that she is not "a disinterested third party witness." (Doc. 16-2, at 22). However, Mrs. Quinn's statements were not intended to serve as a medical opinion and were offered to show her personal observations of her husband. (Doc. 16-6, at 16); *see* 20 C.F.R. §§ 404.1529, 416.929. When evaluating Mrs. Quinn's opinion, the ALJ made "no specific reference . . . to any opinion or observation by a medical doctor." (Doc. 16-2, at 22; *Richards*, 223 F. Supp. 3d at 306. Thus, the ALJ's reasoning that Mrs. Quinn's statement was partially persuasive because she is not "medically trained" is misplaced. (Doc. 16-2, at 22). To the extent that the observations of trained personal were consistent with the primary statement from Mrs. Quinn, that Quinn could neither sit nor stand for long without becoming uncomfortable, the statement should have been considered by the ALJ. (Doc. 16-3, at 6; Doc. 16-6, at 16). Although the ALJ noted that Mrs. Quinn is not a disinterested party, SSA personnel are uninterested observers who do not have any relationship to Quinn. (Doc. 16-6, at 16; Doc. 16-3, at 6). Additionally, an ALJ cannot discount a lay witness's report solely because he or she is not a disinterested witness. *See Richards*, 223 F. Supp. 3d at 306. Thus, the ALJ's reasoning for finding Mrs. Quinn's statement less than persuasive because she is not medically trained, or a disinterested party is improper.

Accordingly, for the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Therefore, the decision of the Commissioner of Social Security will be **VACATED,** and this case will be **REMANDED** for further proceedings

consistent with this Memorandum.

### B. THE COURT DECLINES TO ADDRESS QUINN'S REMAINING ARGUMENTS.

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that the ALJ's RFC assessment is not supported by substantial evidence, the Court declines to address Quinn's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Quinn's additional contentions would be futile given that the ALJ's decision concerning Quinn's RFC assessment may yield a different result.

### V. REMEDY

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320; *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to **REMAND** for further proceedings.

VI. **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Quinn disability benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

**Dated: January 18, 2022**                                        *s/ Karoline Mehalchick*
                                                                   **KAROLINE MEHALCHICK**
                                                                   **Chief United States Magistrate Judge**